IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AMY C. WALDEN-BING,
Plaintiff,

v.                                                      Civil Action No. **4:23-cv-01792**

HORNE LLP,
Defendant.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**
**(NON-QUI TAM; INDIVIDUAL-CAPACITY CLAIMS ONLY)**

**I. Nature of Action**

1. Relator/Plaintiff Amy C. Walden-Bing ("Plaintiff") brings this action only in her individual capacity for retaliation and wrongful discharge based on protected disclosures and related internal reporting while she worked on Emergency Rental Assistance ("ERA") grant-funded program work.

2. Plaintiff does not assert any qui tam cause of action under 31 U.S.C. § 3729 and does not seek recovery for injury to the United States. Plaintiff seeks relief only for her personal injuries resulting from alleged retaliation.

**II. Jurisdiction and Venue**

3. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, including 31 U.S.C. § 3730(h) and 41 U.S.C. § 4712.

4. The Court has supplemental jurisdiction over Plaintiff's alternative Texas common-law claim under 28 U.S.C. § 1367.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this District in connection with work performed on Texas Rent Relief / ERA program operations.

### III. Parties

6. Plaintiff Amy C. Walden-Bing is an individual.

7. Defendant Horne LLP ("Horne") is a professional services firm that performed administrative and related services for the Texas Rent Relief / ERA program.

8. Plaintiff alleges that additional named Defendants acted in concert or within the relevant program operations as described below. Plaintiff's claims seek relief only for personal retaliation and wrongful discharge injuries.

### IV. Factual Allegations

A. Employment and Role

9. Plaintiff was employed by Horne as a W-2 employee in a quality assurance / quality control role. Plaintiff's work on federally funded emergency rental assistance programs ultimately transferred to the **Texas Rent Relief Program** by approximately June 2022. Plaintiff's work included reviewing program applications and files in connection with

ERA grant-funded operations. Additionally, Plaintiff served in the role of Customer Service and Eligibility analyst as a Quality Control Specialist.

B. Protected Activity and Disclosures (**Efforts to Stop/Prevent Fraud or False Claims**)

10. During 2022, Plaintiff observed and documented what she reasonably believed were serious compliance, control failures, and fraud risks in program processing, including funded applications with irregularities and conflicting property or records information that should have triggered investigation and corrective action.

11. The control failures created a substantial risk that ineligible or unverified applications could be approved and funded, and that program submissions and certifications could be inaccurate.

12. Plaintiff understood that Deloitte was also engaged on the program as a subcontractor with responsibilities related to audit and/or oversight functions, and that Deloitte billed the program for those services. Plaintiff's work overlapped with or substituted for functions she reasonably understood to be part of the program's audit/compliance obligations, including identification of irregularities and escalation of suspected fraud indicators.

13. Plaintiff engaged in protected activity by taking lawful steps to stop or prevent what she reasonably believed could constitute fraud against federally funded program monies and/or the submission of false or unsupported claims for payment, including by:
a. raising compliance and fraud-indicator concerns to supervisors and/or management;
b. recommending that suspicious files be escalated, investigated, or removed from

production funding streams pending verification;

c. documenting deficiencies in verification, review, and internal controls; and

d. requesting corrective action to align file handling with program rules and audit/compliance expectations.

14. Plaintiff's concerns included, among other things, that the program's controls and file-handling practices were not being applied in a manner reasonably designed to prevent the payment of claims that lacked reliable support, and that these deficiencies could result in improper payments or inaccurate representations connected to federal program funds

15. Plaintiff reported these issues internally to management and to Human Resources, including concerns about the volume of funded fraudulent applications and ongoing failure to investigate irregularities and reconcile conflicting property records.

16. Plaintiff also made reports to oversight and regulatory authorities, including communications with an Office of Inspector General (OIG) and reports to the Securities and Exchange Commission (SEC) and the U.S. Department of Labor (DOL), concerning suspected misuse of federal funds and related misconduct. Plaintiff alleges this SEC and OIG submission as protected activity and background context for why her internal reports were understood as compliance-related and fraud-prevention activity.

17. Plaintiff's protected activity was undertaken in good faith and was aimed at stopping or preventing conduct that Plaintiff reasonably believed violated, or could lead to violations of, federal fraud and false-claims standards governing the use and administration of federally funded program monies.

## C. Adverse Action and Causation

18. Plaintiff was terminated on or about September 2, 2022, after making internal reports to management and Human Resources regarding funded fraudulent applications and related compliance failures.

19. The temporal proximity and surrounding circumstances support a plausible inference that Plaintiff's protected activity and disclosures were a contributing and motivating factor in the termination and related adverse actions.

## D. Administrative Presentment to Treasury OIG and Exhaustion (41 U.S.C. § 4712)

20. In November 2022, Plaintiff communicated with the U.S. Department of the Treasury, Office of Inspector General ("Treasury OIG"), including Sonja Scott, regarding Plaintiff's work and termination. Plaintiff reported that she had alerted Horne management and Human Resources regarding the amount of fraudulent applications that had been funded; that there was ongoing failure by management to investigate irregularities and review conflicting property records; and that Plaintiff was terminated following her report to management and Human Resources. Plaintiff made these disclosures to Treasury OIG because Plaintiff reasonably believed the conduct reflected misuse of federal grant funds and/or violations of law, rule, or regulation related to a federal grant or contract.

21. More than 210 days have passed since Plaintiff's submission to Treasury OIG. To the extent required, Plaintiff is deemed to have exhausted administrative remedies and brings her 41 U.S.C. § 4712 claim de novo.

**V. Claims for Relief**

**COUNT I - Retaliation in Violation of 31 U.S.C. § 3730(h)**

22. Plaintiff realleges paragraphs 1-21.

23. Plaintiff engaged in protected activity by taking lawful acts to stop or prevent conduct she reasonably believed involved fraud or false-claims risks in a federally funded program, including internal reports and disclosures to oversight and regulatory authorities.

24. Defendants knew of Plaintiff's protected activity.

25. Defendants retaliated against Plaintiff, including by terminating her employment on or about September 2, 2022, because of her protected activity.

26. Plaintiff suffered damages including lost wages and benefits and other compensable losses.

**COUNT II - Whistleblower Reprisal (41 U.S.C. § 4712)**

27. Plaintiff realleges paragraphs 1-21.

28. Plaintiff was an employee of a contractor, subcontractor, grantee, or subgrantee performing work funded in whole or in part with federal funds, including **ERA** federal grant funds.

29. Plaintiff made protected disclosures described above regarding conduct she reasonably believed constituted misuse of federal funds and/or violations of law, rule, or regulation related to a federal grant or contract.

30. Plaintiff disclosed such information to Treasury OIG, including through communications with Sonja Scott in November 2022, and also reported internally to management and Human Resources.

31. Defendants retaliated against Plaintiff by taking adverse personnel action, including termination on or about September 2, 2022, because of Plaintiff's protected disclosures.

32. More than 210 days have passed since Plaintiff's submission to Treasury OIG; to the extent required, Plaintiff is deemed to have exhausted administrative remedies and brings this claim de novo.

**COUNT III - Wrongful Discharge Under Sabine Pilot (Alternative)**

33. Plaintiff realleges paragraphs 1-21.

34. In the alternative, Plaintiff alleges that she was terminated for refusing to participate in, approve, or conceal unlawful processing and funding of applications that Plaintiff reasonably believed involved fraud or illegal conduct related to program funds, and for insisting that irregularities and conflicting records be investigated rather than ignored.

11

## VI. Prayer

35. Plaintiff requests judgment awarding all relief available under 31 U.S.C. § 3730(h), 41 U.S.C. § 4712, and applicable Texas law, including (as applicable)

   A. Reinstatement or front pay,

   B. Back pay and benefits (including any statutorily available multipliers)

   C. Compensatory and special damages

   D. Pre- and post-judgment interest, taxable costs

   E. Reasonable Attorney's Fees and travel expenses

   F. Such other and further relief as the Court deems just and proper.

## VII. Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*[signature]*

Amy Walden-Bing, Pro Se
[Mailing Address on file]
Email: amybingacct@gmail.com

12