IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| United States of America *ex rel.* Amy C. Walden-Bing, | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:23-cv-01792 |
| v. | § § § | |
| Horne, LLP, Deloitte, LLP, Cohn Reznick, and Witt O'Briens, | § § § § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER[1]

Plaintiff Amy C. Walden-Bing, as Relator, brought this *qui tam* suit

under the False Claims Act.  Dkt. 1.  After Walden-Bing's *qui tam* claims were

dismissed, *see* Dkt. 66 (adopting Dkt. 53), Walden-Bing filed a motion for leave

to amend her complaint to bring three claims in her personal capacity.  Dkt. 58.

She also moved to strike Defendants Horne, LLP's and Deloitte, LLP's motions

(Dkts. 48 & 50) for extension of time to answer or otherwise respond to her

complaint.  Dkt. 57.  After carefully considering the motions, the responses,

---

[1] "[A] motion for leave to amend that does not dispose of an existing cause of action, counterclaim, or defense is within a magistrate judge's authority because it is not exempted under [28 U.S.C.] § 636 and is non-dispositive as defined by Federal Rule 72." *Macias v. Bexar Cnty.*, 2023 WL 3103829, at *1 (W.D. Tex. Apr. 25, 2023) (citing *Pyca Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996)).

Dkts. 60, 61, the reply, Dkt. 63, and the applicable law, it is ordered that (a) Walden-Bing's motion for leave to amend (Dkt. 58) be granted in part and denied in part and (b) her motion to strike (Dkt. 57) be denied as moot.

## Background

The following facts are taken as true. Walden-Bing was employed by Horne as a Quality Assurance/Quality Control Specialist to help process applications for rental assistance under the Texas Rent Relief program, which is federally funded. Dkt. 58-1 at 2. During 2022, she "observed and documented" what she believed to be "serious compliance, control failures, and fraud risks in program processing," including "funded applications with irregularities" and "conflicting property or records information." *Id.* at 3. She reported her concerns to management and human resources, including her concerns "about the volume of funded fraudulent applications and ongoing failure to investigate irregularities and reconcile conflicting property records." *Id.* Meanwhile, Walden-Bing made reports to the Office of Inspector General, the Securities and Exchange Commission, and the U.S. Department of Labor. *Id.* Walden-Bing was terminated around September 2, 2022. *Id.* at 5. Two months later, she "communicated" with the Office of Inspector General regarding her concerns and termination. *Id.*

Walden-Bing originally filed this case as a *qui tam* action under the False Claims Act ("FCA"), naming four defendants: Horne, Deloitte, Cohn Reznick,

and Witt O'Briens. Dkt. 1 (filed May 8, 2023). The United States of America ("the Government") declined to intervene, Dkt. 22, and this case was unsealed, Dkt. 23. Thereafter, Walden-Bing's attorney moved to withdraw as counsel, Dkt. 27, which this Court granted, Dkt. 31. The Court's order also extended Walden-Bing's deadline for effectuating service of process. *See* Dkt. 31 at 1-2.

On December 8, 2025, Walden-Bing—acting *pro se*—filed an amended complaint asserting that Horne and Deloitte violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), (a)(1)(G) (Counts I through III) and raising claims for payment by mistake (Count IV), unjust enrichment (Count V) and negligence (Count VI). Dkt. 42 at 23-26. Defendants Cohn Reznick and Witt O'Briens were dropped from the amended complaint. *See id.* at 1.

The Government then intervened solely to seek dismissal of the FCA claims, which a *pro se* litigant cannot pursue on the Government's behalf. *See* Dkts. 45, 46. This Court agreed, dismissing the FCA claims on that basis but also dismissing Walden-Bing's common-law claims for lack of standing. Dkt. 66 (adopting Dkt. 53).

The Court also denied, without prejudice, Walden-Bing's barebones request for leave to amend, instructing Walden-Bing to file a standalone motion for leave that included a proposed amended pleading stating her new claims. Dkt. 53 at 11. Separately, the Court granted Horne's and Deloitte's motions to extend the deadline to answer or otherwise respond to Walden-

3

Bing's amended complaint. Dkt. 49 (December 29, 2025 order granting Horne's motion); Dkt. 53 at 12 (January 6, 2026 order granting Deloitte's motion). After this Court granted the extensions, Walden-Bing filed a motion to strike those requests. Dkt. 57 (filed January 7, 2026).

On January 13, 2026, Walden-Bing moved for leave to file a second amended complaint. Dkt. 58. Her proposed pleading (the "proposed complaint") drops all previous claims and asserts a retaliation claim under the False Claims Act, 31 U.S.C. § 3730, a retaliation claim under the National Defense Authorization Act's ("NDAA") whistleblower provision, 41 U.S.C. § 4712, and an alternative wrongful discharge claim under Texas law. Dkt. 58-1 at 6-7. Both Horne and Deloitte oppose Walden-Bing's motion for leave to amend. Dkt. 60 (Horne's response); Dkt. 61 (Deloitte's response). Walden-Bing replied to Horne's response. Dkt. 63. The motions are ripe for resolution.

## Legal Standard

Rule 15(c) of the Federal Rule of Civil Procedure provides that a party may amend her pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). Otherwise, a "party may amend its pleading only with the opposing party's consent or the court's leave," which the court should freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotation omitted). The relevant factors include "[(1)]

4

whether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, [(2)] the movant is acting in bad faith or with dilatory motive, [(3)] the movant has previously failed to cure deficiencies by prior pleadings, or [(4)] the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action." *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983). Amendment would be futile if a proposed new claim or allegations "could not survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6). *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

## Analysis

As both Horne and Deloitte observe, it is unclear whether Walden-Bing intends to assert claims against Deloitte in her proposed complaint. Because Walden-Bing's proposed complaint contains no factual allegations concerning Deloitte that would state a plausible claim for relief, Walden-Bing's motion for leave to amend is denied against Deloitte.

The conclusion differs as to Walden-Bing's proposed new claims against Horne. As explained below, the proposed complaint plausibly states FCA and NDAA retaliation claims, although not a cognizable wrongful discharge claim. And given this case's procedural posture, Walden-Bing should be allowed to raise the FCA and NDAA retaliation claims when doing so would not unduly

5

prejudice Horne. Walden-Bing's other pending motion to strike (Dkt. 57) is denied as moot.

## I.    The proposed complaint does not state a claim against Deloitte.

Walden-Bing's proposed complaint does not state a claim against Deloitte, and Deloitte should be dismissed. As both Horne and Deloitte observe, *see* Dkt. 60 at 10; Dkt. 61 at 2, the proposed complaint contains mixed signals about her intent to assert claims against Deloitte. The pleading's caption lists only Horne as the "Defendant," yet it states more broadly that "Plaintiff alleges that additional named Defendants acted in concert or within the relevant program operations …." Dkt. 58-1 at 2. Nevertheless, the only other mention of Deloitte asserts that "Plaintiff understood that Deloitte was also engaged on the program as a subcontractor with responsibilities related to audit and/or oversight functions, and that Deloitte billed the program for those services." *Id.* at 3. That lone statement comes nowhere close to stating any plausible claim against Deloitte. Because the proposed complaint's claims against Deloitte could not survive a motion to dismiss, those claims are futile. Walden-Bing is barred from asserting any claim against Deloitte.

## II.   Walden-Bing may amend her complaint to assert only two of her three proposed claims against Horne.

Horne argues that amendment would be futile because venue is improper and because Walden-Bing fails to state any of her claims. Horne also

6

contends that granting Walden-Bing leave to amend would unduly prejudice it. The Court agrees that Walden-Bing fails to state a wrongful discharge claim and therefore denies her request for leave to raise it. But Horne's arguments against allowing Walden-Bing to raise the FCA and NDAA retaliation claims are unpersuasive.

### A.    Venue objections do not inform the analysis.

Horne claims amendment would be futile because venue is improper under Federal Rule of Civil Procedure 12(b)(3). Dkt. 60 at 11-14. But as Walden-Bing observes, *see* Dkt. 63 at 3, "futility is not dependent upon venue considerations." *See Shoes by Firebug LLC v. Stride Rite Child.'s Grp., LLC*, 2017 WL 4682092, at \*2 (E.D. Tex. Oct. 18, 2017). Rather, futility exists when the amended complaint "fail[s] to state a claim upon which relief could be granted" when applying the "same standard of legal sufficiency as applie[d] under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). Venue challenges provide no basis for denying leave to amend.

### B.    The FCA retaliation claim is not futile.

Horne contends that Walden-Bing fails to state an FCA retaliation claim and that such a claim would be time-barred. Dkt. 60 at 14-18. The Court disagrees.

1.    Walden-Bing has stated an FCA retaliation claim.

The purpose of the FCA is to combat fraud against the government. *Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 951 (5th Cir. 1994). "To that end, the FCA contains a whistleblower provision that protects employees who take steps to uncover and report an employer's fraudulent submission of claims to the government." *Jamison v. Fluor Fed. Sols., LLC*, 2019 WL 460304, at *4 (N.D. Tex. Feb. 6, 2019) (quotation omitted).  An FCA retaliation claim has three elements: "(1) the employee 'engaged in protected activity,' (2) the 'employer, or the entity with which he has contracted or serves as an agent, knew about the protected activity,' and (3) 'retaliat[ed] … because of his protected activity." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017) (per curiam) (quoting *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016)).

Contrary to Horne's assertions, *see* Dkt. 60 at 16-17, Walden-Bing sufficiently alleged that she engaged in protected activity known to Horne.  To satisfy the protected activity requirement, an employee need not have filed a *qui tam* action at the time of the alleged retaliation; "[i]t is enough that the conduct raises a 'distinct possibility' of an FCA action or otherwise seeks to stop fraud against the government." *United States ex rel. Gomez v. Koman Constr., LLC*, 796 F. Supp. 3d 353, 383 (W.D. Tex. 2025) (quoting *Nichols v. Baylor Rsch. Inst.*, 418 F. Supp. 3d 143, 153 (N.D. Tex. 2019)).  Internal

8

complaints may qualify as protected activity if they "concern false or fraudulent claims for payment submitted to the government." *United States ex rel. George v. Boston Sci. Corp.*, 864 F. Supp. 2d 597, 605 (S.D. Tex. 2012) (citing *United States ex rel. Patton v. Shaw Servs., LLC*, 418 F. App'x 366, 372 (5th Cir. 2011) (per curiam)). "The touchstone is whether the employee's complaint was 'motivated' by concern over fraud on the government." *Gomez*, 796 F. Supp. 3d at 383 (quotation omitted). But "[m]ere criticism of an employer's practices—without any indication that the relator sought to expose fraud on the government—does not qualify." *Id.* (quotation omitted). And "[a] successful retaliation claim requires Defendant to have known Plaintiff engaged in a protected activity." *Guerrero v. Total Renal Care, Inc.*, 2012 WL 899228, at *7 (W.D. Tex. Mar. 12, 2012).

Here, Walden-Bing adequately alleged that she engaged in protected activity. She alleges that she "observed and documented … serious compliance, control failures, and fraud risks in program processing … [which] created a substantial risk that ineligible or unverified applications could be approved and funded." Dkt. 58-1 at 3. She raised those "fraud-indicator concerns to supervisors and/or management," recommended that "suspicious files be escalated, investigated, or removed from production," and requested "corrective action to align file handling with program rules and audit/compliance expectations." *Id.* at 3-4. And she "reported … concerns

9

about the volume of funded fraudulent applications and ongoing failures to investigate irregularities and reconcile conflicting property records." *Id.* at 4. Because her alleged complaints "concern false or fraudulent claims for payment submitted to the government," Walden-Bing has plausibly alleged the first element of a retaliation claim. *See Patton*, 418 F. App'x at 372; *see also Guerrero v. Total Renal Care, Inc.*, 932 F. Supp. 2d 769, 788 (W.D. Tex. 2013) ("Plaintiff's explicit reference to 'Medicare/Medicaid fraud' was sufficiently aimed at matters that could reasonably lead to a False Claims Act litigation to trigger the FCA's anti-retaliation provisions.") (quotation omitted).

Walden-Bing also sufficiently alleges that Horne had notice of her protected activity. "Courts have found the notice prong satisfied based on allegations that the employee complained directly to her supervisors." *George*, 864 F. Supp. 2d at 608. "[I]f an employee wants to impute knowledge to the employer … [s]he must specifically tell the employer that [s]he is concerned about possible fraud." *Id.* Here, Walden-Bing allegedly reported her fraud concerns to Horne's management and human resources personnel. Dkt. 58-1 at 4. She has plausibly alleged the second element of a retaliation claim.

Lastly, Horne argues that Walden-Bing did not adequately plead the final element of her FCA retaliation claim—that she was discharged for engaging in protected activity. Dkt. 60 at 17-18. Walden-Bing's proposed complaint asserts that "[t]he temporal proximity and surrounding

10

circumstances support a plausible inference that Plaintiff's protected activity"
caused her termination. Dkt. 58-1 at 5. Horne contends that Walden-Bing
fails to allege when she was allegedly engaged in protected activity and that
temporal proximity alone is insufficient to establish causation. Dkt. 60 at 18.
And it argues that Walden-Bing failed to allege who was involved in her
termination and whether they were aware of her protected activity. *Id.*

Walden-Bing does not specify the precise dates of her internal
complaints. *See* Dkt. 58-1 at 4. At the *prima facie* stage, "a plaintiff can meet
[her] burden of causation simply by showing close enough timing between [her]
protected activity and [her] adverse employment action." *Garcia v. Prof'l Cont.
Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). While not a rigid inquiry, the
Fifth Circuit has "even suggested that four months is close enough" to show a
causal connection. *Id.*

Here, Walden-Bing alleges that she complained to both management and
human resources. Dkt. 58-1 at 7. Because she was allegedly transferred to the
Texas Rent Relief program in June 2022 and was terminated on or about
September 2, 2022, those complaints must have less than four months after
she lodged those complaints. Dkt. 58-1 at 2, 5. That timing is close enough, at
this stage, to suggest a causal link between the two events. *See Garcia,* 938
F.3d at 243. Moreover, "it is plausible to conclude that those who made the
adverse employment decision were told of [Walden-Bing's] activity, regardless

of whether [she] directly reported her concerns to them or not." *See Nichols v. Baylor Res. Inst.*, 2020 WL 1158456, at \*11 (N.D. Tex. Mar. 10, 2020). Her allegations are sufficient to plead a cognizable basis for recovery.

> 2. Walden-Bing's FCA retaliation claim relates back to her original complaint.

As an alternative futility argument, Horne contends that Walden-Bing's FCA retaliation claim—which complains of her September 2, 2022 termination, *see* Dkt. 58-1 at 7—is untimely and does not relate back to her May 8, 2023 original complaint. Dkt. 60 at 15-16; *see also* 31 U.S.C. § 3730(h)(3) (3-year limitations period for FCA retaliation claims). Walden-Bing responds that her claim does relate back because it arises from the same conduct, transaction, or occurrence detailed in her original complaint. Dkt. 63 at 3. Walden-Bing has the better argument.

Federal Rule of Civil Procedure 15(c) provides, in pertinent part, that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading …." Fed. R. Civ. P. 15(c)(1)(B). To fall within that rule, "the original and amended petitions [must] state claims that are tied to a common core of operative facts …." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Horne argues that the original complaint did not put it on notice of a potential FCA retaliation claim because, "although the original complaint mentioned retaliation in passing, [it] did so while citing the NDAA, not the retaliation provision in the FCA." Dkt. 60 at 15. But whether the relation-back doctrine applies depends on the factual assertions in Walden-Bing's original complaint, and not the legal theory she invoked.

According to the original complaint, Walden-Bing saw Horne funding "fraudulent applications … that did NOT meet eligibility requirements as established by the Emergency Rental Assistance program," she flagged those applications for her supervisors in July and August 2022, and Horne terminated her employment shortly after she emailed human resources on August 26, 2022, complaining of the "funding of fraudulent applications." Dkt. 1 at 7, 9-10. Walden-Bing's proposed FCA retaliation claim arises out of the same set of facts concerning her alleged reporting of the same irregularities that purportedly led to false or unsupported claims for payment. *Compare with* Dkt. 58 at 3-4. Because the retaliation claim relates back to her original complaint, it is timely. Amendment would not be futile.

## C.    The NDAA retaliation claim is not futile.

Horne contends that Walden-Bing's proposed NDAA retaliation claim (Dkt. 58-1 at 7-8) is futile because she has not exhausted her administrative remedies and her allegations are otherwise inadequate. Dkt. 60 at 18-19. This Court is not persuaded.

The NDAA "prohibits any recipient of federal dollars from retaliating against whistleblowers who report an abuse of that money." *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 353 (5th Cir. 2021); 41 U.S.C. § 4712(a)(1). Because "[t]he NDAA is a relatively newer statute with scant interpretative case law … courts evaluating NDAA retaliation claims often draw upon the analytical frameworks of other whistleblower provisions." *Beltran v. Lockheed Martin Corp.*, 2026 WL 788905, at *1 n.2 (5th Cir. Mar. 20, 2026) (per curiam) (quotation omitted). A *prima facie* case of NDAA retaliation requires that "(1) [the employee] made a protected disclosure to a person specified in the statute; (2) she suffered an adverse employment action, and (3) the protected disclosure was a contributing factor in the adverse employment action." *Beltran v. Lockheed Martin Corp.*, 2026 WL 788905, at *1 (5th Cir. Mar. 20, 2026) (per curiam) (cleaned up).

First, Horne argues that Walden-Bing's NDAA retaliation claim is futile because she failed to exhaust her administrative remedies. Dkt. 60 at 19; *see also Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 580 (5th Cir. 2020)

14

("Section 4712 requires a complainant … to exhaust administrative remedies before filing suit.").  Horne notes that, while Walden-Bing alleges that she "reported" alleged wrongdoing to the Office of the Inspector General ("OIG"), she state that she submitted a retaliation complaint to the OIG.  Dkt. 60 at 19.  Walden-Bing responds that the proposed complaint plausibly alleges administrative exhaustion by asserting she "communicated" with the OIG that she had been terminated after reporting the fraudulent applications.  Dkt. 63 at 4; Dkt. 58-1 at 5.

"[A]dministrative exhaustion is typically treated as an affirmative defense—not a pleading requirement for plaintiffs."  *Thomas v. Hutson*, 2025 WL 903131, at *1 (E.D. La. Mar. 25, 2025) (Section 4712 exhaustion) (collecting cases).  "The failure to exhaust must be 'clear from the face of the complaint' to support Rule 12 dismissal."  *Id.* (quoting *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (per curiam)).  Here, however, it is unclear whether Walden-Bing's alleged communication to OIG about her termination qualifies as a complaint that satisfies exhaustion requirements.  As a result, this Court cannot conclude, based on the pleading alone, that the NDAA claim would be futile for failure to exhaust it.

Second, Horne argues that Walden-Bing's NDAA retaliation claim is "conclusory," and that she "merely restate[s]" its legal elements. Dkt. 60 at 19.  But the same allegations deemed sufficient in the FCA context also plausibly

15

state an NDAA retaliation claim. Walden-Bing allegedly reported concerns about funding fraudulent applications to Horne's management and human resources. Dkt. 58-1 at 4; *see also* 41 U.S.C. § 4712(2)(G) (persons specified in the statute includes "[a] management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct"). And she alleges that the temporal proximity of her report and her eventual termination support a plausible inference that her protected disclosure was a contributing and motivating factor in her termination. *Id.* at 5. Those allegations are enough to state an NDAA retaliation claim.

### D. The wrongful discharge claim is futile.

Horne argues that Walden-Bing fails to state a wrongful discharge claim under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). Dkt. 60 at 20-21. Horne is correct.

To recover on a Texas common-law wrongful discharge claim, a plaintiff must show that (1) she was required to commit an illegal act that carries criminal penalties; (2) she refused; (3) she was discharged; and (4) the sole reason for her discharge was her refusal to commit the unlawful act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735)). But as Horne observes, *see* Dkt. 60 at 20-21, Walden-Bing fails to allege that she was required to commit an illegal act. While she alleges

16

that her work included "reviewing program applications and files in connection with ERA grant-funded operations" and that, over the course of that work, she "observed and documented … serious compliance, control failures, and fraud risks," nowhere does she allege that she was required to engage in any illegal act or perpetrate the alleged fraud she observed.  Nor does she allege that she refused to engage in any illegal act, or that her refusal was the sole reason for her discharge.  Because the proposed complaint fails to state a wrongful discharge claim, this Court denies Walden-Bing's request for leave to raise it.

### E.      Horne will not suffer undue prejudice from amendment.

Horne argues that granting Walden-Bing leave to amend would unduly prejudice it.  Dkt. 60 at 21-22.  Walden-Bing disagrees, noting that no scheduling order has been entered and discovery has yet to begin. Dkt. 63 at 4.  The posture of this case supports allowing amendment.

"The Fifth Circuit and other courts have found prejudice when the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial." *Susca, Inc. v. Burlington Ins. Co.*, 2025 WL 1283995, at *3 (E.D. La. May 2, 2025) (collecting cases).  This case was only unsealed on July 18, 2025. Dkt. 23. The initial conference has not been set nor has discovery commenced.  While Walden-Bing's new retaliation claims change the case's focus, permitting them at this early juncture would not force Horne to "reopen discovery and prepare

17

additional theories of the case," *see Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004), or "to re-urge the same arguments presented in previous dispositive motions," *see Bias*, 816 F.3d at 328.  Horne has not established the type of prejudice that justifies denying leave to amend.  Walden-Bing's motion for leave to amend is therefore granted, but only with respect to the FCA and NDAA retaliation claims.

### III.   Walden-Bing's motion to strike is denied as moot.

On January 9, 2026, Walden-Bing moved to strike Horne's and Deloitte's motions (Dkts. 48 & 50) for extension of time to respond to her first amended complaint.  Dkt. 57.  But the Court had already granted both Horne's and Deloitte's motions.  *See* Dkt. 49 (December 29, 2025 order granting Horne's); Dkt. 53 at 12 (January 6, 2023 order granting Deloitte's).  Walden-Bing's motion to strike is denied as moot.

### Conclusion

For the foregoing reasons, it is **ORDERED** that Amy C. Walden-Bing's motion to strike (Dkt. 57) be **DENIED** as moot.

It is further **ORDERED** that Walden-Bing's motion for leave to amend her complaint (Dkt. 58) is **GRANTED IN PART** and **DENIED IN PART**. Walden-Bing is **GRANTED** leave to amend her complaint to include FCA and NDAA retaliation claims against Horne, LLP, but is **DENIED** leave to assert

18

any claims against Deloitte, LLP and **DENIED** leave to assert a Texas common law wrongful discharge claim.

It is further **ORDERED** that Walden-Bing must file, by **July 27, 2026**, a version of her second amended complaint that eliminates her claims against Deloitte and her state-law wrongful discharge claim against Horne.

It is further **ORDERED** that the initial conference is hereby set for **August 18, 2026 at 9:00 a.m., by Zoom**. Walden-Bing and Horne are reminded that they must fully confer about and then jointly file the Joint Discovery Case Management Plan at least 14 days before that conference.

The Clerk of Court is directed to send a copy of this opinion to Plaintiff by email and regular mail to her record addresses.

Signed on July 20, 2026, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

19